UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

J.B. HUNT TRANSPORT, INC.
615 J.B. Hunt Corporate Drive
Lowell, AR 72745

    *Plaintiff*,                                          Case No.:

v.

ROADSIDE TOWING &
RECOVERY CO.
11900 SW 222 Street
Miami, FL 33170

    *Defendant*.
_____/

**COMPLAINT**

    Plaintiff, J.B. Hunt Transport, Inc. (hereinafter "J.B. Hunt") by and through its undersigned attorneys, brings this action for damages against the Defendant, Roadside Towing & Recovery Co. (hereinafter "Defendant") and alleges the following:

**PARTIES, JURISDICTION, AND VENUE**

    1.    J.B. Hunt is a Georgia corporation with its principal place of business located at 615 J. B. Hunt Corporate Drive, Lowell, Arkansas 72745.

    2.    J.B. Hunt is a motor carrier and freight broker properly licensed and at all times material to this action, was authorized by the Federal Motor Carrier

1

Safety Administration to provide transportation services in interstate commerce for its customers throughout the United States.

3. Defendant is a Florida corporation with its principal place of business located at 11900 SW 222 Street, Miami, Florida 33170 and at all times material to this action, conducted business throughout Florida.

4. Defendant is an automobile towing company that at all times material to this action, represented to the public that it has been providing around-the-clock roadside assistance and towing services throughout south Florida.

5. This Court has *in personam* jurisdiction over the Defendant as well as jurisdiction over the subject matter of this litigation, pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity among the parties and the amount in controversy exceeds $75,000.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the events giving rise to the case *sub judice* took place in Florida and the Defendant has its principal place of business in Miami-Dade County, Florida.

7. J.B. Hunt further alleges that all conditions precedent to the bringing of the claims which are the subject of this lawsuit have occurred or otherwise have been waived by Defendant.

## FACTS COMMON TO ALL COUNTS

8.  At all times material to this action, J.B. Hunt leased from BSE Trailer Leasing ("Bowman") a 2016 Hyundai trailer, vehicle identification number 3H3V532C2GT003661 (the "Trailer"), which J.B. Hunt utilized in its business.

9.  At all times material to this action, J.B. Hunt had the exclusive right to possess the Trailer under the applicable lease agreement.

10. At all times pertinent, the Trailer had a value of approximately $31,050.00, exclusive of the income which it allowed J.B. Hunt to generate in connection with its business.

11. At some point prior to February 22, 2023, and unbeknownst to J.B. Hunt, a motor carrier in possession of the Trailer parked the Trailer at a truck stop in Florida.

12. Upon information and belief, on or about February 22, 2023, Defendant towed the Trailer to its impound lot.

13. J.B. Hunt had no information or knowledge that the Trailer was parked in the subject lot or was being towed by Defendant.

14. Defendant, through its agent Reliable Liens LLC, subsequently generated an invoice in the amount of $593.00 for the towing of the Trailer, with $296.50 attributable to the towing service and $296.50 for labor.

15. Defendant failed to comply with Florida Statute § 713.78(4) by failing

to notify J.B. Hunt or Bowman within seven business days, that Defendant had towed the Trailer, was in possession of the Trailer, or was assessing storage charges for the Trailer.

16. On or about March 27, 2023, over a month after it had towed the Trailer, and having still not sent any notice that Defendant was in possession of the Trailer, Defendant drafted a Towing and Storage Notice of Claim of Lien and Proposed Sale of Motor Vehicle, Mobile Home, or Vessel ("Notice of Proposed Sale") to Bowman. Defendant mailed the Notice of Proposed on March 28, 2023.

17. The Notice of Proposed Sale indicated that Defendant claimed a lien on the Trailer in the total amount of $843.00 and that $0 storage charges would continue to accumulate per day. The Notice of Proposed Sale stated that Defendant intended to sell the Trailer on April 28, 2023 at public auction conducted on its property if payment was not made prior to the sale.

18. J.B. Hunt received the Notice of Proposed Sale from Bowman on or about April 3, 2023 and immediately contacted Defendant to make arrangements to retrieve the Trailer and make payment.

19. Defendant advised J.B. Hunt that it required J.B. Hunt to execute a hold harmless agreement and provide authorization from Bowman in order to permit release of the Trailer.

20. J.B. Hunt provided the documentation requested by Defendant on April 25, 2023, prior to the auction scheduled for April 28, 2023.

21. After J.B. Hunt provided the requested documentation and was making payment arrangements for the stated lien amount, Defendant increased the amount of its invoice and claimed that J.B. Hunt would be required to pay $4,019.00 to prevent sale of the Trailer. This increased amount was due to Defendant's attempt to assess $3,146.00 in storage fees for the Trailer.

22. Under duress, and seeking to prevent the sale of the Trailer, J.B. Hunt wired the full $4,019.00 to Defendant on or about April 27, 2023, satisfying any claimed lien in full plus the claimed storage charges.

23. On April 28, 2023, when J.B. Hunt attempted to retrieve the Trailer, Defendant notified J.B. Hunt that Defendant had sold the Trailer despite J.B. Hunt's payment in full. Defendant then wired the $4,019.00 paid by J.B. Hunt back to J.B. Hunt in an attempt to justify Defendant's improper sale of the Trailer.

24. J.B. Hunt subsequently learned that Defendant is still in possession of the Trailer.

25. After becoming aware that Defendant was still in possession of the Trailer, Defendant, through its counsel, agreed to return the Trailer in exchange for the $4,019.00 originally paid by J.B. Hunt.

26. J.B. Hunt has made repeated attempts to arrange for payment of the agreed upon amount and retrieval of the Trailer, but Defendant has refused to cooperate.

27. Defendant has repeatedly and intentionally interfered with J.B. Hunt's attempts to pay Defendant for the invoice in full with the specific purpose of attempting to improperly assert a "failure to pay" as a basis to sell the Trailer and keep all proceeds for Defendant's own benefit and financial gain.

28. Beginning on or about February 22, 2023 and continuing through the present, J.B. Hunt has been unable to use the Trailer in its own business and has suffered economic damages due to its inability to generate revenue with the Trailer, as a direct and proximate result of the intentional interference of Defendant with J.B. Hunt's ability to make payment to secure release of the Trailer, and Defendant's failure to comply with Florida Statute § 713.78.

29. J.B. Hunt, in an effort to preserve its business relationship with Bowman, has paid Bowman for the value of the Trailer due to Defendant's actions in converting the Trailer.

30. J.B. Hunt has incurred damages associated with the replacement of the Trailer and payment of its value to Bowman as a result of Defendant's improper conduct.

31. J.B. Hunt has also incurred attorney's fees, costs, and expenses associated with the actions, errors and omissions of Defendant and will continue to incur attorney's fees, costs, and expenses associated with Defendant's actions into the future.

## COUNT I - FRAUD

32. J.B. Hunt hereby reiterates, realleges and incorporates by reference Paragraphs 1 through 31 of its Complaint as if fully set forth herein.

33. Defendant intentionally and knowingly made false representations of material fact to J.B. Hunt, which included, but were not limited to stating that Defendant would release the Trailer to J.B. Hunt upon payment of the subject invoice and an executed release and hold harmless agreement.

34. Defendant also intentionally and knowingly omitted the material fact that it intended to sell the Trailer regardless of whether J.B. Hunt paid or not.

35. Defendant made these false representations of material fact knowing that Defendant never intended to release the Trailer, but instead intended to sell the Trailer at auction and/or retain the trailer for its own benefit or financial gain.

36. Defendant made these false representations and omissions with knowledge of their falsity and with the intention that J.B. Hunt rely on them.

37. J.B. Hunt reasonably relied on Defendant's false representations when J.B. Hunt immediately began making arrangements to satisfy the invoice and provide Defendant with a hold harmless agreement.

38. J.B. Hunt, in reliance on Defendant's false representations and simultaneous omissions of material fact, did not take immediate legal action to enjoin the sale of the Trailer, as J.B. Hunt was not made aware that such actions would be necessary.

39. J.B. Hunt suffered damages as a result of its reasonable reliance on Defendant's false representations.

WHEREFORE, J.B. Hunt demands judgment against Defendant in an amount in excess of $75,000.00, plus interest, costs, attorney's fees, and punitive damages, and any such other and further relief as this Court deems just and appropriate.

## COUNT II – CONVERSION

40. J.B. Hunt hereby incorporates by reference Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

41. The Defendant's continued exercise of dominion over the Trailer after J.B. Hunt demanded its return and initiated efforts to secure its return was intentional, without justification, and constituted a conversion of the Trailer.

42. Defendant failed to comply with J.B. Hunt's demand for return of the Trailer after J.B. Hunt issued the required payment demanded by Defendant and provided the executed hold harmless agreement requested by Defendant.

43. Defendant's failure to return the Trailer to J.B. Hunt deprived J.B. Hunt of the possession of the Trailer to which J.B. Hunt is entitled, despite numerous demands from J.B. Hunt that the Trailer be returned.

44. Defendant's acts of ownership or dominion over the Trailer was in denial of J.B. Hunt's possessory rights in the Trailer.

45. Defendant's wrongful acts were done intentionally and with malice, as Defendant knew that J.B. Hunt was actively making efforts to pay the subject invoice and provided Defendant with the hold harmless agreement, despite Defendant's ongoing interference with J.B. Hunt's efforts.

46. As a result of Defendant's conduct and actions, J.B. Hunt has suffered and will continue to suffer damages, including but not limited to, lost revenue, lost profits, damage to its business relationships, and other damages.

WHEREFORE, J.B. Hunt demands judgment against Defendant in an amount in excess of $75,000.00, plus interest, costs, attorney's fees, and punitive damages, and any such other and further relief as this Court deems just and appropriate.

## COUNT III - TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

47. J.B. Hunt hereby incorporates by reference Paragraphs 1 through 31 of its Complaint as if fully set forth herein.

48. J.B. Hunt has valid and enforceable contracts with its customers in which J.B. Hunt agreed to deliver customers' cargo in J.B. Hunt's owned or leased trailers, including the subject Trailer, in exchange for payment.

49. J.B. Hunt also had a valid and enforceable lease agreement with Bowman that required J.B. Hunt to return the Trailer to Bowman at the time the lease agreement is terminated.

50. Defendant had knowledge of J.B. Hunt's business relationships with customers and Bowman.

51. Defendant intentionally and unjustifiably interfered with J.B. Hunt's business relationships with its customers and Bowman by improperly selling the Trailer at auction and depriving J.B. Hunt of its possessory right to the Trailer.

52. Defendant's intentional interference with J.B. Hunt's business relationships has resulted in damages to J.B. Hunt as a result of Defendant's intentional interference.

WHEREFORE, J.B. Hunt demands judgment against Defendant in an amount in excess of $75,000.00, plus interest, costs, attorney's fees, and punitive

damages, and any such other and further relief as this Court deems just and appropriate.

## COUNT IV – REPLEVIN

53. J.B. Hunt hereby incorporates by reference Paragraphs 1 through 31 of its Complaint as if fully set forth herein.

54. The Trailer is valued at approximately $31,050.00.

55. J.B. Hunt is entitled to the Trailer pursuant to its lease agreement with Bowman. Despite J.B. Hunt's repeated demands that Defendant return the Trailer, Defendant has wrongly detained the Trailer.

56. Defendant did not retain the Trailer for any valid tax, assessment, or fine pursuant to Florida law.

57. Defendant did not retain the Trailer under any valid execution or attachment against the Trailer pursuant to Florida law.

58. J.B. Hunt is entitled to the return of the Trailer under the applicable facts and circumstances of this case.

59. Based on information and belief, Defendant is currently in possession of the Trailer and is storing it at Defendant's property located at 11900 SW 222 Street, Miami, Florida 33170.

WHEREFORE, J.B. Hunt demands judgment against Defendant and a Writ of Replevin for the return of the Trailer to J.B. Hunt, plus costs, and attorney's fees, and any such other and further relief as this Court deems just and appropriate.

### COUNT V – BREACH OF CONTRACT

60. J.B. Hunt hereby incorporates by reference Paragraphs 1 through 31 of the Complaint as if fully set forth herein.

61. J.B. Hunt and Defendant entered into a valid, binding contract wherein J.B. Hunt agreed to pay $4,019.00 in exchange for Defendant's return of the Trailer to J.B. Hunt.

62. J.B. Hunt fulfilled its obligations under the agreement by paying the agreed upon $4,019.00.

63. Defendant materially breached the agreement by refusing to return the Trailer to J.B. Hunt following payment.

64. Defendant subsequently agreed, through its counsel, to accept the original $4,019.00 in exchange for release of the Trailer to J.B. Hunt.

65. Since the time that Defendant renewed the agreement with J.B. Hunt, Defendant has failed to communicate with J.B. Hunt for purposes of returning the Trailer and, to date, has refused to return the Trailer to J.B. Hunt.

66. As a result of the Defendant's breach of the agreement, J.B. Hunt has suffered and will continue to suffer damages, including but not limited to, loss of

the value of the Trailer, lost revenue, lost profits, damage to its business relationships, and other damages.

WHEREFORE, J.B. Hunt demands judgment against Defendant in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees, and any such other and further relief as this Court deems just and appropriate.

## COUNT VI – CIVIL THEFT

67. J.B. Hunt hereby incorporates by reference Paragraphs 1 through 31 of the Complaint as if fully set forth herein.

68. Defendant, with felonious intent, obtained and retained J.B. Hunt's property without just cause and without the permission of, or notice to, J.B. Hunt, permanently depriving J.B. Hunt of the benefit of the property and its possessory rights in the same.

69. J.B. Hunt has demanded the return of its Trailer, or in the alternative, proceeds derived from the sale of the same.

70. Defendant has nonetheless knowingly and intentionally retained the proceeds from the sale for its own use, in contravention of Florida law.

WHEREFORE, J.B. Hunt demands judgment against Defendant in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees, and any such other and further relief as this Court deems just and appropriate.

/s Libbie Reese
P. RAÚL ALVAREZ, JR., ESQUIRE

Florida Bar No. 775215
LIBBIE REESE, ESQUIRE
Florida Bar No. 0091967
Alvarez, Thompson & Smoak, P.A.
P.O. Box 3511
Orlando FL 32802-3511
Phone:  (407) 210-2796
Facsimile: (407) 210-2795
Counsel for Plaintiff

*Designated Email Addresses:*
*pra@atslawyers.com*;
*lreese@atslawyers.com*;
*lporter@atslawyers.com*;
*mquilez@atslawyers.com.*